AMERICAN EXCH. NAT. BANK OF DALLAS et al. v. COLONIAL TRUST CO.
(No. 1604.)

(Court of Civil Appeals of Texas. Texarkana. April 6, 1916. Rehearing Denied April 20, 1916.)

1. RECORDS ⬥⟿7—RECORDATION—"FILED."

Under Rev. St. art. 6824, requiring that a mortgage or deed of trust to be given priority shall be filed with the clerk to be recorded as required by law, and article 6791, providing that an instrument shall be deemed as recorded and effectual as notice from the time it was deposited for record in the county clerk's office, and article 6828, providing that it shall be deemed of record when delivered to the clerk of the proper court to be recorded, an instrument is "filed with the clerk" to be recorded as required by law when it is delivered to the clerk and by him received in his official custody, regardless of whether it is then entered in the record books.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 6; Dec. Dig. ⬥⟿7.

For other definitions, see Words and Phrases, First and Second Series, File.]

2. RECORDS ⬥⟿5—RECORDATION—PAYMENT OF FEES.

Under Rev. St. art. 3862, providing that no county clerk shall be compelled to file or record any instrument until payment or tender of all legal fees therefor, and in view of articles 6792 and 6789, the clerk is merely entitled to demand such fees when the instrument is offered for record, but, if he fails to demand them immediately, and retains the instrument in his custody pending notification of the necessity of paying the fees, the instrument is nevertheless filed for record, and operates to give notice to all persons of its existence.

[Ed. Note.—For other cases, see Records, Dec. Dig. ⬥⟿5.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by the Colonial Trust Company to foreclose a judgment lien against the American Exchange National Bank of Dallas and others. Judgment for plaintiff, and defendants appeal. Modified and affirmed.

The suit was brought by the Colonial Trust Company to foreclose a judgment lien owned by W. J. Moon and to have such judgment lien declared to be first and prior to the lien of a deed of trust on the same land executed by W. J. Moon to Nathan Adams, trustee. The trial was before the court, whose decision awarded priority to the lien of plaintiff's abstract of judgment. The question on appeal is solely respecting the priority of liens by reason of notice.

S. C. Trimble sold and transferred to the Colonial Trust Company, a corporation, for a valuable consideration, a judgment he had obtained in an action for debt in the district court of Hill county against W. J. Moon on

May 5, 1914. On June 2, 1914, an abstract of the judgment was filed, recorded, and indexed according to legal requirements in the county clerk's office in Hill county. The judgment is still subsisting and unsatisfied. The secretary and treasurer of the trust company testified that:

"At the time of the transfer of the Trimble judgment herein sued on to the Colonial Trust Company I did not have any notice or knowledge of the execution of the deed of trust by W. J. Moon to Nathan Adams, trustee."

It does not appear what officer acted for the trust company in purchasing the judgment, nor does it appear that any officer of the trust company did or did not have notice of the deed of trust at the time of the judgment lien. On May 27, 1914, W. J. Moon executed a deed of trust on certain lots in Hillsboro, Tex., to Nathan Adams, trustee, to secure payment of two notes which constituted a pre-existing debt reduced to the form of two notes, due by W. J. Moon to the American Exchange National Bank. W. J. Moon at the date of the deed of trust was the owner of the lot in fee simple. The deed of trust was signed, acknowledged, and delivered by W. J. Moon to Nathan Adams, trustee. The date of filing and recording the deed of trust in the county clerk's office is dependent upon the evidence next given. It appeared on May 28, 1914, the assistant cashier of the bank forwarded the deed of trust by mail to the county clerk of Hill county, with the following letter:

"Dear Sir: We beg to hand you herewith for record deed of trust of W. J. Moon to Nathan Adams, trustee, for the benefit of this bank and W. O. Womack. When recorded kindly return to us, advising amount of your fee, and we will remit you promptly to cover same."

The deed of trust, together with the letter, was received in the county clerk's office on May 29, 1914. The deputy clerk testified that upon receiving the letter he opened it and took out the deed of trust and indorsed on the back of it the following: "Filed for record this 29th day of June, 1914, at 9 o'clock a. m."—and then signed it officially. Noticing at once, as he says, that he had inadvertently written the word "June" in the indorsement, he scratched that word out, and wrote in its place and above it the word "May." Very shortly afterwards the deputy clerk marked out the entire indorsement above mentioned on the deed of trust. He explained that he marked out the indorsement because he discovered upon reading the letter that the recording fee had not been inclosed, and because it was the custom and rule of the office not to file for record or record any deed of trust or other instrument of that kind without the recording fee being paid in advance. The deputy clerk, after making out the indorsement, then indorsed on the back of the deed of trust the following figures, which indicated the date of its receipt: "5–29–14"—and placed the deed of trust in a pigeonhole in the shelving in the office. And at once on May 29, 1914, the deputy clerk mailed to the bank at Dallas, which was received by it the next day, a postal card, saying:

"In compliance with the laws of the state of Texas (section 2459, R. S.), all fees for work done in the county clerk's office are due and payable when the instrument is filed. The amount of fee for recording the instrument sent this office for record on 5/29/14 D. T., W. J. Moon to American Exchange National Bank, is as follows: $1.50. Upon receipt of the above amount the instrument will be filed and recorded in regular order; otherwise it will be returned after 10 days."

The deputy clerk testified that:

"At the expiration of the 10 days, or on the 8th or 9th of June, I put the deed of trust in an envelope with a letter to the American Exchange Bank, stating that as per the notice of the 29th, in which was stated that we would return it at the expiration of 10 days if the filing fee was not sent, that I was returning it to them. The deed of trust was returned and not filed. Then they promptly returned it the following day. The money for the filing was received on June 9th in the morning mail, and the deed of trust was filed at 9 o'clock that morning."

The deed of trust has also the indorsement on it "Filed for record at 9 o'clock a. m. June 9, 1914," and signed officially in the name of the clerk by the deputy. And the certificate appearing on the deed of trust made in the name of the clerk by the deputy recites:

"That the foregoing instrument of writing, together with its certificate of authentication, was filed for record in my office the 9th day of June, A. D. 1914, at 9 o'clock a. m., and duly recorded the 9th day of June, A. D. 1914, in volume 20, page 198, of the records of said county."

The deed of trust was held and remained in the possession and custody of the county clerk at and before and during the filing, recording, and indexing of the abstract of judgment on June 2, 1914. The testimony shows that on June 10, 1914, the bank mailed a letter to the county clerk, inclosing a check of same date for $1.50, being the recording fee of the deed of trust. The clerk received the check and cashed it. According to the evidence offered by the bank, the deed of trust had been duly entered of record at the time the clerk returned it, and the recording fee was remitted after the record and on June 10, 1914.

Smith, Robertson & Robertson, of Dallas, for appellants. Wear & Frazier and J. J. Averitte, all of Hillsboro, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant bank predicates error in subordinating the lien of its deed of trust, which was prior in point of execution, to that of the judgment lien of the trust company, which was junior in point of creation. And the question is dependent, it is thought, upon whether or not the bank continued and protected the priority of the deed of trust by having the deed of trust, as required by article 6824, R. S., "filed with the clerk, to be recorded as required by law," at the time of the creation of the judgment lien. The re-

quirement of the article, in order to continue and protect the priority of the deed of trust, is simply that it be "filed with the clerk, to be recorded as required by law," at the time of the creation of the subsequent lien. And in this respect the article seems to be similar to other provisions of the statute which deem an instrument as recorded and effectual as notice from the time it "was deposited for record" in the county clerk's office (article 6791) and "when delivered to the clerk of the proper court to be recorded" (article 6828). The term "filed with the clerk, to be recorded as required by law," therefore should be regarded, it is thought, as intended to mean and be the equivalent of the words "deposited for record in the county clerk's office," or "delivered to the clerk, to be recorded." Hence an instrument is "filed with the clerk," within the meaning of the article, when it is delivered to the clerk and by him received in his official custody. Holman v. Chevaillier, 14 Tex. 337; Snider v. Methvin, 60 Tex. 487; Lessing v. Gilbert, 8 Tex. Civ. App. 174, 27 S. W. 751.

[2] Now, according to the evidence here, the clerk, acting by the deputy, after making a demand for his recording fees, indorsed on the back of the instrument the date of its receipt by him in his office, and held and retained such indorsed deed of trust in his official custody with intention and purpose to actually enter of record, if the recording fee was remitted, at any time during the time so held. If the acts of the clerk operated to be in legal effect a filing of the deed of trust for record, then the clerk may not destroy the status of the deed of trust by his subsequent acts. Article 3862 provides:

"No county clerk shall be compelled to file or record any instrument of writing permitted or required by law to be recorded, until after payment or tender of payment of all legal fees for such filing or recording has been made."

By this article the clerk is merely authorized to demand in advance "all legal fees for such filing or recording" of the instrument. The words "compelled to file or record," as used, evidently have reference only to doing the services required by law in each respect of making entry on the file register and of recording; for it is made the duty of the county clerk when an instrument is "deposited" in his office for record to: (1) Make a memorandum thereof on the file register (article 6789); and (2) record it; and (3) do the indexing (article 6792). While the clerk may under this article have the personal privilege of requiring payment of his fees, he is not, as seen, forbidden to receive and retain in his office custody for record an authorized instrument until there is payment or prepayment of the recording fee. Therefore, if he has the legal right to refuse to receive an instrument in his official custody unless the fees for recording be paid to him in advance, it must, it is thought, be immediately

or seasonably exercised upon the tender of the instrument for record. By so doing and refusing to receive the instrument in his official custody for record the legal effect would not attach of being deemed filed for record. But, when the clerk receives and retains the instrument in his official custody, it is filed within the meaning of the law. It is not intended by the article to clothe the clerk with the power of making or defeating rights respecting registration. And it would be within the power of a clerk to make or defeat rights if the article be not construed as above. Under this article as so construed, therefore, the clerk may refuse to receive in his official custody an instrument for record unless his recording fees are paid or tendered in advance. If the clerk, though, receives and retains the instrument in his official custody awaiting payment of his fees, he, in legal effect, waives his personal privilege of requiring payment, and must file and record, as required by law, the instrument so received. In this case the clerk did not refuse to receive from the bank the deed of trust, nor undertake to mail it back to the bank during the course of the day, but indorsed on the instrument the date of its receipt by him in his office, and held and continued possession of it in his official custody. The clerk's indorsing on the deed of trust the date of its reception, and holding and retaining it in his official custody with intention to actually enter of record if the recording fee was remitted, would constitute, it is thought, the instrument as filed within the meaning of the law. And, the deed of trust being in legal contemplation filed with the clerk, it operated to give notice to the trust company. Throckmorton v. Price, 28 Tex. 606, 91 Am. Dec. 334; Carlisle v. King, 103 Tex. 620, 133 S. W. 241, 864.

It is believed the judgment should be modified so as to give priority to the lien of the deed of trust, and as so modified will be affirmed. The costs of appeal will be taxed against the Colonial Trust Company.

Modified and affirmed.